**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

United States District Court
District of Connecticut
FILED AT        HARTFORD

2/28        2007

Kevin F. Rowe, Clerk

Deputy Clerk

```
--------------------------------------------------------X
OMER BULENT YALINCAK,                      :
AYFER YALINCAK, HALE YALINCAK,             :
AND HAKAN YALINCAK                         :
                                           :
                           Plaintiffs,     :
                                           :
V.                                         :
                                           :
BARACK FERRAZZANO KIRSCHBAUM               :
PERLMAN AND NAGELBERG, LLP,                :
MICHAEL J. LEGAMARO, PETER                 :
BARACK, DENNIS FERRAZZANO,                 :
HOWARD J. KIRSCHBAUM, CHARLES              :
H. PERLMAN, HOWARD NAGELBERG,              :
DAVID SELMERS, JEFF SHAMERG,               :
BRETT FEINBERG,  DANA L. REDBURG,          :
JEFFREY RINKOV, WOLFGANG OUT,              :
CORPORATE AGENTS, (ST. LUCIA) LTD.,        :
CORPORATE AGENTS (BVI), LTD.,              :
ROBERT N. CHAN, DAVID I. FERBER,           :
STANLEY ESSNER, FERBER,  FROST,            :
CHAN, AND ESSNER, LLP, HMMH                :
HOLDINGS, LLC, HMMH ST. LUCIA,             :
LTD, DAEDALUS CAPITAL (CAYMAN), LLC,       :
STEPHEN J. DENARI, PRESTON TSAO,           :
MARY E. SIACHITANO, MATTHEW J.             :
THOMAS, LISA LABONTE, RALPH                :
HALLENBORG, MJL INVESTMENTS, LP,           :
AND ALAN J. CONNER,                        :
                                           :
                           Defendants.     :
--------------------------------------------------------X
```

CIVIL CASE NO.

3:07cv 311 (AVC)

To the Clerk of the Court:

The above-entitled action is related to <u>United States v. Hakan Yalincak, et al</u>,

CR. NO. 3:05-CR-00111-JBA-1 and 3:05-CR-00153-JBA-1 and also <u>Healey et al</u> v.

<u>Yalincak et al</u>, Civil Case No. 3:05-CV-00545 (JBA). In the interests of judicial economy

and fairness, the above-entitled action should be assigned to The Honorable Janet Bond Arterton, United States District Judge, United States District Court for the District of Connecticut, sitting in New Haven, Connecticut as she is already familiar with the case and the facts surrounding the case.

Respectfully submitted,
**Omer B. Yalincak,**
**Ayfer Yalincak,**
**Hale Yalincak, and**
**Hakan Yalincak.**

Hakan Yalincak
Attention:
Bernard M. Grossberg, Esq.
99 Summer Street,
Suite 1800
Boston, MA 02110
(617) 737-8558 Tel.
(617) 737-8223 Fax.
bgrossberg@grossberglaw.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X

OMER BULENT YALINCAK,                                    :
AYFER YALINCAK, HALE YALINCAK,                           :
AND HAKAN YALINCAK                                       :
                                                         :
                     Plaintiffs,                         :    CIVIL CASE NO.
                                                         :
V.                                                       :
                                                         :
BARACK FERRAZZANO KIRSCHBAUM                             :
PERLMAN AND NAGELBERG, LLP,                              :
MICHAEL J. LEGAMARO, PETER                               :
BARACK, DENNIS FERRAZZANO,                               :
HOWARD J. KIRSCHBAUM, CHARLES                            :
H. PERLMAN, HOWARD NAGELBERG,                            :
DAVID SELMERS, JEFF SHAMERG,                             :
BRETT FEINBERG,  DANA L. REDBURG,                        :
JEFFREY RINKOV, WOLFGANG OUT,                            :
CORPORATE AGENTS, (ST. LUCIA) LTD.,                      :
CORPORATE AGENTS (BVI), LTD.,                            :
ROBERT N. CHAN, DAVID I. FERBER,                         :
STANLEY ESSNER, FERBER,  FROST,                          :
CHAN, AND ESSNER, LLP, HMMH                              :
HOLDINGS, LLC, HMMH ST. LUCIA,                           :
LTD, DAEDALUS CAPITAL (CAYMAN), LLC,  :
STEPHEN J. DENARI, PRESTON TSAO,                         :
MARY E. SIACHITANO, MATTHEW J.                           :
THOMAS, LISA LABONTE, RALPH                              :
HALLENBORG, MJL INVESTMENTS, LP,                         :
AND ALAN J. CONNER,                                      :
                                                         :
                     Defendants.                         :
---------------------------------------------------------------X

## COMPLAINT AND JURY DEMAND

As and for their Complaint, Omer Bulent Yalincak, Ayfer Yalincak, Hale

Yalincak, and Hakan Yalincak (the "Plaintiffs"), hereby allege as follows:

1

## I.    THE PARTIES

1.      The plaintiff Omer Bulent Yalincak ("Omer"), is an individual and a resident of the State of Connecticut.

2.      The plaintiff Ayfer Yalincak ("Ayfer"), is an individual and a resident of the State of Connecticut.

3.      The plaintiff Hale Yalincak ("Hale"), is an individual and a resident of the State of Connecticut.

4.      The plaintiff Hakan Yalincak ("Hakan"), is an individual and a resident of the State of Connecticut.

5.      The defendant Barack Ferrazzano Kirschbaum Perlman And Nagelberg, LLP ("BFKPN") is a limited liability partnership formed under the laws of the State of Illinois and doing business in the State of Connecticut.

6.      The defendant Michael J. Legamaro ("Legamaro"), is an individual and a resident of the State of New York and the State of Illinois and formerly a partner at BFKPN.

7.      The defendant Peter Barack ("Barack"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

8.      The defendant Dennis Ferrazzano ("Ferrazzano"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

9.      The defendant Howard J. Kirschbaum ("Kirschbaum"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

10.     The defendant Charles H. Perlman ("Perlman"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

11.     The defendant Howard Nagelberg ("Nagelberg"), is an individual and a

2

resident of the State of Illinois and a partner at BFKPN.

12.　The defendant David Selmers ("Selmers"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

13.　The defendant Jeff Shamberg ("Shamberg"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

14.　The defendant Brett Feinberg ("Feinberg"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

15.　The defendant Dana L. Redberg ("Redberg"), is an individual and a resident of the State of Illinois and a partner at BFKPN.

16.　The defendant Jeffrey Rinkov ("Rinkov"), is an individual and a resident of the State of Illinois and a partner at.

17.　The Defendants, Legamaro, Barack, Ferrazzano, Kirschbaum, Perlman, Nagelberg, Selmers, Shamberg, Feinberg, Redburg, and Rinkov, (hereinafter collectively referred to as the "BFKPN Partners") are jointly and severally and individually liable, for the unlawful acts committed by the defendants BFKPN and its subsidiaries, such as BFKPN Corporate Services, Inc. ("BFKPN CS") (hereinafter collectively referred to as the "BFKPN Companies") because (a) the BFKPN Partners own, directly or indirectly, all of the membership interests in the BFKPN Companies; (b) the BFKPN Companies and their employees willfully participated in the unlawful acts committed by the BFKPN Partners; (c) the BFKPN Partners represented to the Plaintiffs that they were backed financially by the BFKPN Companies; (d) the BFKPN Companies are not entitled to be treated as separate and distinct legal entities and the BFKPN Partners are not protected by the corporate veil, as they have acted beyond the scope of their corporate duties and by

3

virtue of having: (i) commingled assets; (ii) a failure to observe corporate formalities; (iii) interlocking officers, directors, employees, and members; (iv) active and pervasive control by the same persons; (v) injurious consequences to the Plaintiffs by reason of the relationship and collusion among the BFKPN Partners and BFKPN Companies (hereinafter collectively referred to as the "BFKPN Parties").

18.     The defendant Wolfgang Out ("Out"), is an individual and a resident of Curacao, Netherlands Antilles and the manager of Corporate Agents (St. Lucia), Ltd., and Corporate Agents (BVI), Ltd.

18.     The defendant Corporate Agents (St. Lucia), Ltd. ("CA St. Lucia"), is a limited company incorporated under the laws of St. Lucia, Netherlands Antilles.

19.     The defendant Corporate Agents (BVI), Ltd. ("CA BVI"), is a limited company incorporated under the laws of the British Virgin Islands.

20.     The Defendant, Out, CA St. Lucia, and CA BVI (hereinafter collectively referred to as the "CA Parties") are jointly and severally and individually liable, for the unlawful acts committed by the defendants CA St. Lucia, and CA BVI (hereinafter collectively referred to as the "CA Companies") because (a) the Out owns, directly or indirectly, all of the membership interests in the CA Companies; (b) the CA Companies and their employees willfully participated in the unlawful acts committed by the CA Parties; (c) the CA Parties represented to the Plaintiffs that they were backed financially by the CA Companies; (d) the CA Companies are not entitled to be treated as separate and distinct legal entities and the CA Parties are not protected by the corporate veil, as they have acted beyond the scope of their corporate duties and by virtue of having: (i) commingled assets; (ii) a failure to observe corporate formalities; (iii) interlocking officers, directors, employees, and members; (iv) active and pervasive control by the

4

same person (Wolfgang Out); (v) injurious consequences to the Plaintiffs by reason of the relationship and collusion among the CA Companies and Out.

21.    The defendant Robert N. Chan ("Chan"), is an individual and a resident of the State of New York and a partner in the law firm of Ferber Frost Chan And Essner, LLP.

22.    The defendant David I. Ferber ("Ferber"), is an individual and a resident of the State of New York and a partner in the law firm of Ferber Frost Chan And Essner, LLP.

23.    The defendant Ferber Frost Chan And Essner, LLP ("FFCEILLP"), is a foreign limited

liability partnership with a principal place of business in New York.

24.    The Defendants, Chan, Ferber, Essner, and FFCELLP (hereinafter collectively referred to as the "FFCELLP Partners") are jointly and severally and individually liable, for the unlawful acts committed by the FFCELLP because (a) the FFCELLP Partners own, directly or indirectly, all of the membership interests in FFCELLP; (b) FFCELLP and their employees willfully participated in the unlawful acts committed by the FFCELLP Partners; (c) the FFCELLP Partners represented to the Plaintiffs that they were backed financially by FFCELLP; (d) the FFCELLP Partners are not protected by the corporate veil, as they have acted beyond the scope of their corporate duties and by virtue of having:  (i) commingled assets; (ii) a failure to observe corporate formalities; (iii) interlocking officers, directors, employees, and members; (iv) active and pervasive control by the same persons; (v) injurious consequences to the Plaintiffs by reason of the relationship and collusion among the FFCELLP Partners and FFCELLP (hereinafter collectively referred to as the "FFCELLP Parties").

25.     The defendant HMMH Holdings, LLC ("HMMH I"), is a limited liability company formed under the laws of the State of Delaware.

26.     The defendant HMMH St. Lucia, Ltd. ("HMMH II"), is a St. Lucia, Netherlands Antilles, limited company.

27.     The defendant Daedalus Capital (Cayman), LLC ("Daedalus Cayman"), is a Cayman limited liability company.

28.     The defendant Stephen J. Denari ("Denari"), is a citizen and a resident of the State of New York and Illinois.

29.     The defendant Preston Tsao ("Tsao"), is a citizen and a resident of the State of New York.

30.     The defendant Mary E. Siachitano ("Siachitano"), is a citizen and a resident of the State of New York.

31.     The defendant Matthew J. Thomas ("Thomas"), is a citizen and a resident of the State of New York.

32.     The defendant Lisa LaBonte ("LaBonte"), is a citizen and a resident of the State of New York and Hawaii.

33.     The defendant Ralph Hallenborg ("Hallenborg"), is a citizen and a resident of the State of New York.

34.     The defendant MJL Investments, LP ("MJLILP"), is a limited partnership formed as an investment vehicle for Legamaro under the laws of the State of Illinois.

35.     The defendant Alan J. Conner ("Conner"), is a citizen and a resident of the State of New York and Georgia.

## II.    JURISDICTION AND VENUE

36.    This Court has subject matter jurisdiction over (a) the RICO claims pursuant to 28 U.S.C. §1331 (federal question) and 18 U.S.C. §1964(c) (RICO); (b) the state law claims pursuant to 28 U.S.C. §1367(a) (supplemental) as well as ancillary and pendent jurisdiction principles; and (c) over all claims pursuant to 28 U.S.C. §§1332(a)(1) and (3) (diversity action where the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States as well as between citizens of different States in which subjects of a foreign state are additional parties)[1].

41.    Venue is proper in this Court pursuant to (a) 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Connecticut; (b) 18 U.S.C. §1965(a) because all defendants reside, are found or transact business in Connecticut; and (c) 28 U.S.C. §1391(d) because an alien (i.e., a "subject" of a foreign state) may be sued in any district.

## STATEMENT OF FACTS

## III. BACKGROUND

### A. DEUTSCHE BANK, AG

42.    In or about October 2002, the Yalincak family was referred to Deutsche Bank, AG ("DB") for the purposes of establishing a banking relationship; Brian Formento ("Formento"), an employee of DB, was assigned as the account representative and relationship manager for the Yalincak family.

---

[1] Unlike a corporation, which for jurisdictional purposes is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business," 28 U.S.C. §1332(c)(1), a limited liability company ("LLC") is similar to a limited partnership and, consequently, "has the citizenship of its membership." Handelsman v. Bedford Village Assoc., L.P., 213 F.3d 48, 51-52 (2d Cir. 2000) (citing, Carden v. Arkoma Assocs., 494 U.S. 185, 195-196 (1990) (holding that a limited partnership is not in its own right a "citizen" of the State that created it within the meaning of the federal diversity statute)).

43.     In or about the spring of 2003, DB opened several trading accounts and a checking account for and on behalf of the Yalincak family (hereinafter referred to as the "DB Accounts").

## B. DEUTSCHE BANK, AG ESTATE PLANNING

44.     In or about July 20003, DB advised, in relevant part, that it had a "Delaware Trust affiliate, Deutsche Bank Trust Company Delaware [hereinafter referred to as "DBT"]," and that it could offer competitive pricing and structures that would benefit the family and offered to review the Yalincak family's existing trusts, as well as, recommend certain tax and estate planning strategies.

45.     In or about August 2003, DB reviewed three Delaware Asset Protection Trusts (Bristol Smyrna Capital Management Trust, Bristol Izmir Capital Management Trust, and Longterm Capital Management Trust) already in existence for and on behalf of the Yalincak family and provided via e-mail a thirteen (13) page memorandum marked "Confidential Memorandum," "Re: Delaware Trusts," and dated August 27, 2003. (hereinafter referred to as the "August 27 Memorandum")(A copy of the August 27, 2003 Memorandum is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.)

46.     On or about September 10, 2003, Paul McGloin ("McGloin"), Gary Marzolla ("Marzolla"), Formento, Paul Bisset ("Bisset"), of DB and DBT and Legamaro, arranged for a conference call with Hakan and advised that they would summarize their recommendations in a formal memorandum. This was the first time that Hakan, or any member of the Yalincak family, had been introduced to Legamaro and the law firm of Barack Ferrazzano Kirschbaum Perlman And Nagelberg, LLP. Hakan specifically asked

for a referral to "an attorney who would not cost a lot and who could do the job quickly.[2]"

47.     On or about September 22, 2003, McGloin, Marzolla, Formento, and Bisset, provided via e-mail a fifteen (15) page memorandum marked "Confidential Memorandum," and "Re: Proposal for Creation of Trusts," recommending, in relevant part, "Our proposal, in essence, is to create three sets of trusts in response to these different goals...Estate Planning: Create a Dynasty Trust....Asset Protection Planning: Create two Asset Protection Trusts....Transfer of Assets at Death: Create Revocable Trusts..." (hereinafter referred to as the "September 22 Memorandum")(A copy of the said memorandum is attached hereto as Exhibit B and incorporated by reference as if fully set forth in.)

48.     The September 22 Memorandum concluded in "Article VII. Costs of Implementation," that concluded "Using legal counsel we have worked with in the past, we would estimate the total cost of drafting the five trusts discussed in this in this memorandum to be $20,000 or less. On the facts given in this memorandum, the cost for Deutsche Bank Delaware to act as Administrative Trustee of the Dynasty Trust and the two Asset Protection Trusts has been estimated by our trust new business director at $17,000 per trust per annum. The services provided would include all trust administration and preparation of all necessary income tax returns for the trusts." See, Exhibit B at 14.

## C. DEUTSCHE BANK, AG INTRODUCTION TO BFKPN PARTIES

49.     On September 29, 203, McGloin sent an e-mail a message to Legamaro advising him on how to market his services. The e-mail message stated, in relevant part,

---

[2] At the time, the Yalincak family was represented by the Boston, Massachusetts law firm of Jager Smith, P.C., and had asked DB about potential contacts at the New York law firm of Simpson Bartlett & Thatcher, Brian Cave, Cravath, Swaine, and Moore, and Skadden, Arps, Slate, Meagher, and Flom, LLP.

as follows: "Michael: Hakan's e-mail is yalincak@aol.com. To give you the flavor, attached

is one of the 'Asset Protection Trusts' that was drafted for the family: (See attached file:

Yalincak trust3(Izmir).Zip) I would suggest that you send Hakan (call him Hakan) an e-

mail, cc-ing brian.formento@db.com and paul.mcgloin.com. Tell Hakan that I gave given

you redacted copies of the planning memorandum and outline. You have reviewed the

outline and think you could prepare the 5 trusts described there for a fee of $15,000. (The

memo said $20k, but he asked whether the fee might be less.) You have attached samples

of a Delaware Dynasty trust and asset protection trust which you pared for other

similarly-situated clients. These are not exactly what is specified in the outline, but will

give him a sense of the nature of these trusts. You could prepare actual trust drafts for

review within 2 weeks of his go-ahead. Your services would not include advice in

connection with the funding of the trusts---you would be happy, however, to advise

separately on that subject. Give him some of your background, emphasizing that you

work on very complex cases at very competitive prices, your international experience,

your familiarity with financial products and transactions, etc. Since the clients of record

would be Mr. and Mrs. Yalincak (his parents), before finalizing the plan it is your

obligation as a lawyer to confirm that it is in accordance with their wishes. Let's keep our

fingers crossed!!! Best regards, Paul." (hereinafter referred to as the "September 29 e-

mail")(A copy of the September 29 email is attached hereto as Exhibit C and

incorporated by reference as if fully set forth herein.)

     50.     On October 1, 2003, Legamaro sent an e-mail to Yalincak stating, in

relevant part, as follows: "Moreover, as you may be aware, Paul forwarded for my

review and comment redacted copies of a planning memo and outline that I understand he

has prepared for you. In those materials, he has suggested (and I agree) that your parents

establish five separate trusts, including asset protection trusts and dynasty trusts. It is my understanding that you and your parents have agreed to that basic plan. [Please note, however, since (as I understand it) your parents will be the clients of record, my obligations as an attorney necessitate that I confirm that the plans we ultimately conclude are consistent with their wishes.] I would be honored to provide to you and your parents legal services in connection with establishment of the trusts, including initial counseling and drafting the trusts to incorporate definitive plans. I presume that, once I have the go-ahead, the documents could be ready within a week or ten days. Further, I would anticipate legal fees for drafting the five trusts to be approximately $15,000...I look forward to the opportunity to discuss these matters with further, in that regard please feel free to call or write me. My vitals..." (hereinafter referred to as the "October 1 e-mail")(A copy of the October 1 e-mail is attached hereto as Exhibit D and incorporated by reference as if fully set forth herein.)

51.     On or about November 4, 2003, Legamaro visited Greenwich, Connecticut and met with members of the Yalincak family at the Oyster Bar in Greenwich, Connecticut (hereinafter referred to as the "November 2003 meeting").

### D. ENGAGEMENT OF BFKPN PARTIES

52.     Subsequent to the November 2003 meeting, on or about December 4, 2003, Legamaro forwarded to Formento, McGloin, and Hakan, an engagement letter on Barack Ferrazzano Kirschbaum Perlman And Nagelberg, LLP letterhead marked "Client Engagement-Representation in Connection with Estate Plan," and addressed to Mr. & Mrs. Yalincak (hereinafter referred to as the "BFKPN engagement letter").

53.     On or about January 8, 2004, Formento came to the Yalincak family's office in Greenwich, Connecticut and provided a second copy of the BFKPN engagement letter.

54.     On or about January 8, 2004, an executed copy of the BFKPN engagement letter was returned to Legamaro.

55.     In or about February 2004, Legamaro was advised by DB and DBT that they intended on closing the aforementioned DB Accounts.

### E. NEW YORK UNIVERSITY ("NYU") GIFT NEGOTIATIONS

56.     In or about March 2004, Legamaro and Conner arranged for a dinner meeting with Debra LaMorte ("LaMorte") and Steven Curry ("Curry"), who at the time were serving as the Senior Vice President of Alumni Relations and the Dean of the School of General Studies, respectively, at the New York University ("NYU"), to discuss a potential donation to the NYU[3]. The defendant Conner had delivered numerous statements to the Yalincak family beginning in or about February 2003 and continuing to on or about April 2005, regarding his management of Yasam.

57.     Beginning on or about March 19, 2004 and continuing until on or about September 24, 2004, Legamaro engaged in Gift Agreement negotiations with the NYU. Specifically, Legamaro met with and engaged in negotiations with LaMorte and Kathy Schulz ("Schulz"), an Associate Counsel for the NYU[4].

---

[3] The said dinner was at a restaurant called Ennio and Michael's on the New York University Campus.
[4] See, The Omer B. Yalincak and Ayferafet Yalincak Family Foundation v. Thomas Capital Management, et al, Case No. CV-06-5000975-S; The Omer B. Yalincak and Ayferafet Yalincak Family Foundation v. Cormac B. Meehan, Case No. CV-06-5001386-S; and SACS Global Trust & Mortgage, LLC f/k/a Greenwich Global Trust & Mortgage, Inc. v. Matthew J. Thomas, et al, Case No. 3:06-CV-01228 (JBA).

## F. DAEDALUS CAPITAL RELATIVE VALUE FUND I, LLC

58.    In or about March 2004, Thomas recruited Hakan to start a hedge fund known as the Daedalus Capital Relative Value Fund I, LLC, focused on fixed income and equity relative value trading strategies.

59.    In or about March 2004, Thomas obtained an investment of $250,000.00 from an individual known as Waddah Al-Mousa (hereinafter referred to as "WAM").

60.    In or about March 2004, Legamaro became the General Counsel of the said hedge fund.

61.    In or about March 2004, Legamaro delivered a legal opinion to Joseph Cannavo ("J.C.") and Leonard Cannavo ("L.C."), through their accountant Thomas W. Andersen, Sr. As a result thereof, J.C. and L.C. also entered into a series of derivative transactions with Greenwich Global Trust & Mortgage, Inc.

62.    In or about April 2004, Legamaro hired an employee of Bear Stearns named Siachitano to manage the day-to-day affairs of a mortgage company then known as Greenwich Global Trust & Mortgage, Inc., a Connecticut corporation licensed for first and second mortgage correspondence lending by the State of Connecticut Banking Department, with a principal place of business located in Greenwich, Connecticut.

## G. FORMATION OF THE OMER BULENT YALINCAK

## AND

## AYFERAFET YALINCAK FAMILY FOUNDATION

63.    On or about May 3, 2004, Legamaro and BFKPN caused to be formed The Omer Bulent Yalincak and Ayferafet Yalincak Family Foundation, Inc. (hereinafter the "Yalincak Family Foundation") under the laws of the State of Delaware. (A copy of the Articles of Incorporation and Bylaws are attached hereto as Exhibit E.)

13

64.     The defendant Legamaro represented that the Yalincak Family Foundation would be managed in accordance with the following objectives: "(a) To support, directly and/or indirectly, scientific, literary, artistic and/or educational activities including, without limitation, public and private universities located in the United States of America; (b) To support, directly and/or indirectly, medical research conducted by medical research organizations, universities, hospitals, and other institutions, including without limitation, medical research focused upon Hodgkins-related cancers, their causes and cures; and (c) To support, directly and/or indirectly, such other charitable purposes as the corporation shall reasonably undertake." See, Exhibit E, supra.

65.     On May 17, 2004, Legamaro delivered to the Yalincak family a Memorandum on BFKPN letterhead, marked "YALN: Limitations on the Deduction for Charitable Contributions." (A copy of the said memorandum is attached hereto as Exhibit F.)

66.     On May 18, 2004, Legamaro delivered to the Yalincak family a Memorandum on BFKPN letterhead, marked "YALN: Earmarking Charitable Contributions for a Particular Purpose or Use." (A copy of the said memorandum is attached hereto as Exhibit G.)

67.     In or about May 2004, Legamaro delivered to the Yalincak family financials for a Yalincak family entity then known as Yasam Trading, LLC ("Yasam"), a Connecticut limited liability company. The said financials were purportedly audited by an entity known as Kirschbaum Perlman & Nagelberg, LLP (hereinafter referred to as the "Yasam financials"). (A copy of the said financials are attached hereto as Exhibit H.)

68.     In or about May 2004, Legamaro participated in the dissemination of the Yasam financials to, amongst others, Mizuho Securities USA, Inc., Dresdner Kleinwort

Wassertein Securities, LLC, Dresdner Bank, AG, Lehman Brothers, Inc., UBS, AG, and Bear Stearns. As a result of the foregoing, Yasam entered into a series of Repurchase Agreements, and ISDA (International Swap Dealers Association) Agreements.

69.    On or about June 3, 2004, Legamaro and Siachitano arranged and attended a meeting with Dresdner Bank officials in New York City, during which Legamaro represented that the financials were true and accurate and reflected the true financial condition of Yasam.

## H. ENGAGEMENT OF SHERMAN, RICHICHI, & HICKEY, LLC

70.    In or about June 2004, as a result of a credit fraud spree that defendant Thomas had engaged in with Bank One (now JP Morgan Chase), Legamaro referred Hakan to a criminal defense attorney, Michael Sherman ("Sherman") of the law firm of Sherman, Richichi, & Hickey, LLC.

71.    On June 19, 2004, in reliance on the advice of defendant Legamaro, Hakan retained Sherman[5].

72.    In or about June 2004, as a result of an investigation into the business activities of Greenwich Global Trust & Mortgage, Inc. ("GGTM") by the State of Connecticut Banking Department, Legamaro advised Hakan to retain the law firm of Martin, Lucas, & Chioffi, LLP.

## I. ENGAGEMENT OF MARTIN, LUCAS, & CHIOFFI, LLP

73.    In or about June 2004, in reliance on the advice of defendant Legamaro, Hakan retained the law firm of Martin, Lucas, & Chioffi, LLP.

---

[5] See, Hakan Yalincak v. Michael Sherman, et al, Civil Case No. 3:07-CV-00170 (AHN); Hakan Yalincak v. Michael Sherman, Statewide Grievance Complaint No. 06-0312; and Hakan Yalincak v. Michael Sherman, Federal Grievance No. 3:07-GP-0004 (AWT).

74.     In or about June 2004, Legamaro arranged for promissory notes to be drafted for defendant Thomas to conceal his credit card fraud spree. See, <u>SACS Global Trust & Mortgage, LLC f/k/a Greenwich Global Trust & Mortgage, Inc. v. Matthew J. Thomas, et al</u>, Case No. 3:06-CV-01228 (JBA). In addition, Thomas raised an additional $400,000.00 in investments using Private Placement Memoranda prepared in collusion with defendant Legamaro from the following individuals: "J.H.," "W.A.," "J.B.," and "J.O."

75.     On or about July 2, 2004, the Foundation entered into a $2,500,000.00 Gift Agreement with the NYU (hereinafter referred to as "Gift Agreement I"). The said Gift Agreement was negotiated by defendant Legamaro.

76.     On or about August 4, 2004, the defendant Legamaro met with Philip Bartlett of Bear Stearns, as well as, Rene Marty, Rene LeBarre, Harold Steger, and Guy Martel, of UBS, AG.

77.     In or about August 2004, as a result of the fraudulent financials given to Dresdner Bank, AG and Dresdner Kleinwort Wassertein Securities, LLC, the said bank froze the investment accounts of Yasam Trading, LLC and Greenwich Global Trust & Mortgage, Inc., which at the time had a balance remaining of approximately $374,000.00 out of the original $696,000.00 deposited between May 2004 and July 2004.

## J. ENGAGEMENT OF FERBER FROST CHAN AND ESSNER, LLP

78.     As a result of the foregoing, the defendant Legamaro referred Hakan to the law firm of Ferber Frost Chan And Essner, LLP.

79.     In or about August 2004, in reliance on the advice of defendant Legamaro, Hakan retained the law firm of Ferber Frost Chan And Essner, LLP.

80.     In or about August 2004, Siachitano and Legamaro arranged for the lease of a certain real property known as "229 Upper Shad Road" located in Pound Ridge, New York[6].

81.     On or about August 17, 2004, Legamaro formed the entity known as the Daedalus Capital Partners, LLC ("DCP") under the laws of the State of Delaware.

82.     On or about August 24, 2004, Legamaro formed the entity known as the Daedalus Capital Relative Value Fund I, LLC (the "Fund") under the laws of the State of Delaware.

83.     On or about August 24, 2004, Legamaro formed the entity known as the Daedalus Capital Relative Value Portfolio, LLC (the "Onshore Portfolio") under the laws of the State of Delaware.

84.     On or about August 26, 2004, the defendant Thomas participated in a teleconference with two investors in the Fund identified as "A.C.," and "J.H."

85.     As a result of the said teleconference, and Private Placement Memoranda prepared by defendant Legamaro, Selmers, and BFKPN, the said investors ("A.C." and "J.H.") invested an additional $2,250,000.00 in the said Fund.

86.     In or about September 2004, Legamaro and Siachitano opened an investment account in the name of the Onshore Portfolio at the UBS, AG, in Zurich, Switzerland.

87.     In or about September 2004, Legamaro finished his negotiations with the NYU regarding a second Gift on behalf of the Foundation and on September 24, 2004,

---

[6] See, Omer B. Yalincak et al v. Renee Ring, et al, Civil Case No. CV-06-5001312-S; and Hakan Yalincak v. Renee E. Ring, et al, Civil Case No. 3:07-00130 (JBA).

the Foundation entered into a $18,500,000.00 Gift Agreement (hereinafter "Gift Agreement II") with the NYU.

88.     In or about September 2004, Legamaro caused to be wired $70,000.00 from the Greenwich Special Financing I, LLC dba Yasam Trading, LLC, Peoples Bank account to the JPM Chase Bank personal account of Mary E. Siachitano (Account No. 365000879365).

89.     On or about September 28, 2004, Legamaro delivered a $1,250,000.00 check drawn on the Greenwich Special Financing I, LLC dba Yasam Trading, LLC, Peoples Bank account to LaMorte for the benefit of NYU as performance on Gift Agreement I and Gift Agreement II. Subsquently, on or about September 29, 204, $1,000,000.00 was caused to be transferred by use of interstate communication from the DCP account to the GSF account.

## IV. BFKPNLLP PARTIES AND FFCELLP PARTIES UNLAWFUL ACTS

90.     From at least June 2004 through the present, BFKPNLLP, embarked upon a series of schemes and transactions to harm the Plaintiffs with respect to the Plaintiffs' ownership interest in the Yalincak Family trusts, which owned HMMH I, by means of various unlawful activities. As described in more detail below, among the schemes used by the BFKPN Parties to harm the Plaintiffs were the creation of numerous sham transactions, fabricated documents, and false financial and corporate records within HMMH, and its subsidiaries, as well as other activities designed to: (a) enrich the BKPNLLP Parties at the expense of the Plaintiffs; and (b) to hide the true financial condition and operations of the entities controlled and managed by the BFKPNLLP Parties.

91.    On or about October 1, 2004, the defendant Legamaro formed an entity

called HMMH Holdings, LLC ("HMMH I"), a Delaware limited liability company, with

a principal place of business located at 112 Mason Street, Greenwich, Connecticut.

Legamaro represented that the said entity was fully owned by a series of Yalincak Trusts

that he had created; however, that he was at all times its manager. As a part of the

formation of the entity, defendant Legamaro had members of the Yalincak family turn

over all control of the aforementioned entities pursuant to a written "Contribution and &

Assignment Agreement." (A copy of the said Agreement, together with an organizational

chart prepared by Legamaro and Chan, is attached hereto as Exhibit I.)

### A. BFKPNLLP PARTIES BREACHES OF FIDUCIARY DUTY:
### (i) FRAUD; (ii) CONVERSION; AND (iii) FABRICATION OF DOCUMENTS

92.    In or about October 2004, the defendant Thomas delivered Private

Placement Memoranda prepared by defendants Legamaro, Selmers, and BFKPN to

W.A.M. and J.H. and solicited and  received an additional $500,000.00 and $300,000.00

as investments into the Fund.

93.    On or about October 18, 2004, Legamaro and Siachitano, together with

another Fund principal, caused to be wired $68,612.55 from the DCP account to an

account for a Porsche Dealership. The said Porsche was for the benefit of Siachitano and

is currently still titled for the benefit of Siachitano.

94.    In or about October 2004, Legamaro opened a bank account in the name

of Greenwich Global Structured Finance, LLC, a Delaware limited liability company, at

the Chicago, Illinois branch of JP Morgan Chase.

95.     In or about October 2004, Legamaro formed an entity known as Daedalus Capital (Cayman), LLC under the laws of the Cayman Islands. (A copy of the Articles of Incorporation and Bylaws are attached hereto as Exhibit J.)

96.     In or about October 2004, Legamaro caused to be formed the entities known as SACS Capital Group, LLC, SACS Special Financing, LLC, and SACS Global Trust & Mortgage, LLC, under the laws of the State of Delaware.

97.     In or about October 2004, Legamaro caused the entity known as SACS Global Trust & Mortgage, LLC to acquire the entity known as Greenwich Global Trust & Mortgage, Inc.

98.     In or about October 2004, Legamaro caused to be formed the entity known as Hakan Hale Holdings, LLC, under the laws of the State of Delaware.

99.     In or about October 2004, Legamaro caused to be formed the entity known as Sugarloaf Commercial Properties, LLC, under the laws of the State of Delaware.

100.    In or about October 2004, Legamaro caused to be formed the Hale Yalincak Irrevocable Trust, the Hakan Yalincak Revocable Trust, and the Hakan Yalincak Irrevocable Trust with himself as the trustee.

101.    In or about October 2004, Legamaro, Selmers, and BFKPN forwarded a new Private Placement Memoranda to the Yalincak family and other investors in the Fund. (A copy of the said Private Placement Memoranda is attached hereto as Exhibit K.) In addition, in or about October 2004, Legamaro forwarded to the Yalincak family Subscription Documents for the Fund indicating a $20,000,000.00 investment for and on behalf of the entity known as Yasam. The said documents were signed by Legamaro, in his capacity as trustee and General Counsel for and on behalf of the Yalincak family.

102.    On or about October 27, 2004, Legamaro and Siachitano attended a dinner celebration with NYU personnel, including defendant LaMorte.

103.    In or about November 2004, Legamaro and Siachitano caused to be opened an account for and on behalf of HMMH at the JP Morgan Chase. The signatories on the account at all times were, Legamaro, Siachitano, and Hakan, and the bank statements were sent to 333 W. Wacker Drive, Suite 2700, Attention: Michael J. Legamaro, Chicago, Illinois. (A copy of the banking documentation are attached hereto as Exhibit L.)

104.    On or about November 7, 2004, with the assistance of defendant Legamaro, Hakan was issued a whole-life life insurance policy with a face value of $10,000,000.00 by the Mass Mutual Life Insurance Company.

105.    On or about December 10, 2004, with the assistance of defendant Legamaro, Hakan was issued two life insurance policies by Mass Mutual Life Insurance Company as follows:  (a) $15,000,000.00 Variable Universal Life; and (b) $5,000,000.00 term-life insurance.

106.    In or about December 2004, Legamaro was notified by LaMorte of an investigation being conducted by the United States Department of Justice.

107.    In or about January 2005, attorney Sherman participated in a teleconference with the United States Department of Justice and was notified of their investigation into the lawfulness of the Fund.

108.    In or about January 2005, defendant Legamaro forwarded Private Placement Memoranda to defendant Thomas and advised him, in relevant part, that "all investors must sign the new documentation." The new documents changed the lock-up

period in the Fund from seven (7) days, and in some instances one (1) year, to two (2) years.

109.    On or about January 26, 2005, defendant Legamaro attended an NYU function, the Sir Harold Acton dinner and represented that a portion of the Yalincak family's hedge fund investment, that he was managing as trustee, would be signed over to fulfill the remaining obligations of the Foundation.

110.    In or about February 2005, Chan reached a settlement with Dresdner Kleinwort Wassertein Securities, LLC and Dresdner Bank, AG and received $150,000.00 as consideration. The said consideration was distributed to defendants Chan, Thomas, Legamaro, and BFKPN.

111.    On or about February 28, 2005, two investors in the Fund, J.H. and A.C. contacted Thomas, and subsequently, Legamaro and requested the return of their entire investment in the Fund. In response to their request, Legamaro issued two letters to J.H. and A.C. confirming the availability of their investments. (A copy of the letter is attached hereto as Exhibit M.)

112.    On or about March 1, 2005, two investors in the Fund, J.B. and J.O. contacted Thomas, and subsequently, Legamaro and requested the return of their entire investment in the Fund. In response to their request, Legamaro issued two letters to J.H. and A.C. (A copy of the said letter is attached hereto as Exhibit N.)

113.    On or about March 1, 2005, Legamaro and his assistant John Chan, issued a Schedule K-1 (Form 1065) for all investors in the Fund. Legamaro forwarded via Federal Express a partnership tax return for the Daedalus Capital Relative Value Fund I, LLC, verifying the investment by Yasam Trading, LLC in the amount of $20,000,000.00

and the Foundation in the amount of $750,000.00. (A copy of the said Schedule K-1 (Form 1065) is attached hereto as <u>Exhibit O</u>.)

114.    On or about March 2, 2005, defendant Thomas, in response to J.B.'s and J.O.'s withdrawal requests, e-mailed defendant Legamaro, advising, in relevant part, "I'm faxing it shortly, but thought you might also wish to see it in email. I never had this in .pdf, just .doc, so I was able to copy and paste it below. It is exactly the same for both of them. Thanks and best, mjt." (A copy of the e-mail is attached hereto as <u>Exhibit P</u>.)

115.    On or about March 3, 2005, Legamaro was advised by the United States Department of Justice of the falsity of the Yasam financials. Indeed, an agent of the Federal Bureau of Investigation ("FBI") sent a facsimile to Legamaro. (A copy of the facsimile is attached hereto as <u>Exhibit Q</u>.)

116.    On or about March 24, 2005, defendant Legamaro arranged a meeting with defendant Marzolla at the DB and DBT branch located at 280 Park Avenue, New York, New York to discuss the potential opening of an account by defendant Legamaro as the trustee of the Hale Yalincak Irrevocable Trust.

117.    In or about March 2005, defendant Legamaro and defendant Denari fired the then Chief Executive Officer of DCP, defendant Thomas, for "willful misconduct resulting in demonstrably material injury to the company."

118.    On or about March 31, 2005, Legamaro and Denari negotiated and executed an Employment Agreement (hereinafter the "Hallenborg Agreement") with defendant Hallenborg by which defendant Hallenborg would become Chief Executive Officer of DCP pursuant to an Employment Agreement drafted by Legamaro.

119.    In or about April of 2005, defendants Legamaro, Denari, and Hallenborg, negotiated with and executed an agreement with defendant LaBonte and her business of

Pacific Business Forums ("PBF") (hereinafter the "LaBonte Agreement") for and on behalf of DCP. The said LaBonte Agreement provided for, inter alia, that defendant LaBonte would serve as Marketing Officer of DCP, as well as, receive some Fifteen-Thousand ($15,000.00) Dollars as consideration for services to be rendered.

120.    In or about April 2005, defendant Legamaro, Denari, and Hallenborg, negotiated and executed a Consultancy Agreement with defendant Tsao (hereinafter the "Tsao Agreement") for and on behalf of HMMH and for the benefit of DCP. Said Agreement provided for, inter alia, Tsao to have the title of "Chief Marketing Officer" and receive a one time draw of $125,000.00.

121.    On or about April 25, 2005, defendants Legamaro, and Feinberg, and negotiated with Hines 600 Lexington Avenue, LLC (hereinafter referred to as "600 Hines") and caused to be executed a ten-year, $2.5 million lease agreement for and on behalf of DCP (hereinafter referred to as the "Hines Lease"). (A copy of the Lease Agreement is attached hereto as Exhibit R.)

122.    On or about April 26, 2005, defendants Legamaro and Hallenborg caused to be opened and did open an account in the name of DCP at Bank One/JP Morgan Chase (hereinafter the "HMMH Account II"). Statements for this account were addressed in care of Michael J. Legamaro, 333 W. Wacker Drive, Suite 2700, Chicago, Illinois. The account listed only defendants Legamaro and Hallenborg as signatories in their respective capacities as Counsel and Chief Executive Officer. (A copy of the banking documents are attached hereto as Exhibit S.)

123.    On or about April 29, 2005, defendant Legamaro transferred $15,000.00 from the HMMH Account I, to a First Hawaii Bank account owned by defendant LaBonte (Account Number: 01-099000) in payment of the LaBonte Agreement. (A copy